PeaesoN, J.
 

 The defendant Joseph Pool admits that be was liable to account for all the property purchased by him, directly or indirectly, at the sale made by him, as trustee, under the deed of trust executed by Jesse Pool; but he insists that he is protected by the decree which he obtained in the bill filed against George Pool, the administrator, and the heirs-at-law of the said Jesse ; and he prays to have the same benefit of that decree as if it were specially pleaded in bar of the plaintiffs’ Equity. So, the only question is in respect to the force and effect of that decree.
 

 The defendant says
 
 “
 
 he was advised by an eminent member of the bar to institute the proceeding referred to, against the personal and real representatives of the maker of the deed of trust, being told by him that his purchases were
 
 invalid
 
 and illegal, at the election of the parties interested in the trust, who could either charge him with his bids, or compel a resale, should property advance. He accordingly filed the bill to compel the parties to make their election, which was done in good faith, to relieve himself from the embarrassment of his position, by which he might suffer, and could not gain, and he is now advised that this was a proper and rightful course on his part.”
 

 As tiie estate of Jesse Pool was greatly indebted, over and above the debts secured by the deed of trust, his personal and real representatives had, in truth, no interest to call for an account of the trust fund. The persons really interested were the creditors not secured by the trust. Their debtor was entitled to the resulting trust or surplus, after the pay
 
 *20
 
 ment of the secured debts; and this trust they had a right to reach, and “ to work out their equity ” through the representatives of the deceased debtor. Had they been made parties to the bill of the trustee, there would have been some show of justice in the proceeding; but to call upon the administrator and heirs-at-law, who were not interested in the matter, to make an election whereby to deprive the creditors of the deceased debtor of their right to subject this resulting trust,, and to avail themselves of all incidental equities growing out of the
 
 invalid
 
 and
 
 illegal
 
 acts of the- trustee, was a mere farce.
 

 That a trustee can “relieve himself from the embarrassment of his position,” growing out of a breach of duty, or fraud on his part, (for such the law considers it,) by putting any one to an election, is a novel application of that doctrine, for which no authority has been cited, and no reason could be assigned.
 

 A mortgagee has a right to call upon the morgagor either to pay the debt, or have his equity of redemption foreclosed. This is put on the ground that the mortgage is only a security for the debt, and the mortgagee, being in no default, is not obliged to wait upon the pleasure of the debtor; but this principle has no sort of application to the case of a trustee who is in default, and has made himself liable by a breach of duty. The only mode of relief left open for him, is to make retribution by acting honestly, and having a fair, open sale of the property, so as
 
 to get it out of his hands.
 
 It is not for him to say that he will keep the property, unless the parties interested elect to have a re-sale.
 

 If the creditors not secured by the deed of trust had been made parties to the bill, and offered no objection to the decree, possibly their rights would have been concluded by it; but it cannot be seriously contended that their rights are affected by a decree, in which the administrator and heirs-at-law of the debtor are made to surrender, without any consideration whatever, rights in which they had no interest, but which were valuable to creditors.
 

 There will be a reference to take an account of the trust
 
 *21
 
 fund, in which the trustee will be charged with the property actually sold by him at public sale, at the prices bid for it, and credited with the debts secured in the deed of trust which lie has paid off. The trustee will also be charged with the present value of such of the trust property as he still has in his possession, together with the rents and profits thereof, lie will also be charged with such of the trust property as he has since Resold at the prices obtained, together with the rents and profits up to the time of such resale; and he will be entitled to interest upon such amount of the trust debts paid by him, as may exceed the amount of the proceeds of the property sold.
 

 In reference to the steam-mill and the slaves, which the trustee conveyed to his father, John Pool, at the amount bid for them, there is evidence that that was not the real value ; for they were afterwards sold for double the amount, including some small repairs. The trustee will be charged with the actual value of this property at the time he made the private sale to his father; and the cause will be retained for further directions.
 

 Pee CuriaM. Decree accordingly.